H. F. SUHR & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 3649, 7568.    Decided October 19, 1926.

> Upon the evidence, *held*, that the petitioner has not established its right to have its tax liability for the years 1918, 1920 and 1921, computed under the provisions of section 303 of the Revenue Act of 1918, and is not entitled to relief for such years under the provisions of section 328 of the same Act.

*Perry W. Shrader, Esq.*, for the petitioner.
*George E. Adams, Esq.*, for the respondent.

The Commissioner asserts deficiencies in income and profits taxes for the calendar years 1918, 1920 and 1921, in the respective amounts of $13,590.05, $947.88, and $420.42, all of which are in controversy. The petitioner presents alternative contentions: (1) That on account of the nature of its business it is entitled to have its tax liability computed under the provisions of section 303 of the Revenue Act of 1918; and (2) that, if such method of computation is refused, it is entitled to special assessment. On motion the two appeals were consolidated.

FINDINGS OF FACT.

The petitioner is a California corporation with its principal place of business in San Francisco, where it was engaged in the undertaking business during the taxable years. Its authorized capital is $60,000, divided into 600 shares of the par value of $100 each, all of which was issued fully paid and was owned as follows in 1918: A. W. Nelson, secretary, 50 shares; H. Fred Suhr, Jr., treasurer, 50 shares;

E. M. Welch, vice president, 150 shares; C. R. Welch, director, 150 shares; William Welch, director, 150 shares; H. F. Suhr, Sr., president, 50 shares. The stockholdings and stockholders remained the same throughout the taxable years, except that H. F. Suhr, Sr., died prior to December 31, 1921.

H. Fred Suhr, Jr., and E. M. Welch are licensed embalmers and were regularly engaged in the active conduct of the affairs of the petitioner during the taxable years. Suhr devoted all his time thereto, except one day and two or three evenings of each week, which were required in the discharge of his duties as a member of the Board of Supervisors of San Francisco County. As such supervisor he received a salary of $1,200 per year for the years 1918 and 1920, and of $2,400 a year for the year 1921. Welch devoted his entire time to the business.

The income of the petitioner resulted from the sale of caskets and other undertakers' supplies, from services rendered as embalmers, from the hire of automobiles and other vehicles for funeral services, and from various minor sources incident to the business.

### OPINION.

LANSDON: The petitioner's first contention is that its tax liability should be computed under the provisions of section 303 of the Revenue Act of 1918 and of the similar provisions of the Revenue Act of 1921, which are as follows:

That if part of the net income of a corporation is derived (1) from a trade or business (or a branch of a trade or business) in which the employment of capital is necessary, and (2) a part (constituting not less than 30 per centum of its total net income) is derived from a separate trade or business (or a distinctly separate branch of the trade or business) which if constituting the sole trade or business would bring it within the class of "personal service corporations," then (under regulations prescribed by the Commissioner with the approval of the Secretary) the tax upon the first part of such net income shall be separately computed (allowing in such computation only the same proportionate part of the credits authorized in sections 311 and 312), and the tax upon the second part shall be the same percentage thereof as the tax so computed upon the first part is of such first part: *Provided,* That the tax upon such second part shall in no case be less than 20 per centum thereof, unless the tax upon the entire net income, if computed without benefit of this section, would constitute less than 20 per centum of such entire net income, in which event the tax shall be determined upon the entire net income, without reference to this section, as other taxes are determined under this title. The total tax computed under this section shall be subject to the limitations provided in section 302.

The evidence adduced in support of this contention is not persuasive. We are not convinced that this petitioner's income can be segregated to conform to the terms of the statute. We are not satisfied that any part of such income was " derived from a separate trade

or business" or from "a distinctly separate branch of the trade or business." Supplying caskets and funeral materials and accessories, embalming the dead, furnishing automobiles, and rendering the other services enumerated by the petitioner are all inseparable parts of a single business. Even if the sources of income were within the provisions of the statute there is not sufficient evidence to enable us to make the segregations necessary to compute the petitioner's tax liability under the provisions of law relied upon for relief.

The documentary evidence shows that salaries in substantial amounts were paid to all the stockholders, that such stockholders were officers or directors, and that only H. Fred Suhr, Jr., and E. M. Welch were regularly engaged in the active conduct of the business of the petitioner. To approximate the percentage of income which the law requires shall be derived from the personal service branch of a business, it is apparent that all salaries must be charged against the merchandise department. The total receipts from embalming, while considerable, never exceeded 10 per cent of the gross income of the petitioner in any year involved in this proceeding. Moreover, such services were rendered for the most part by employees who had no participating interest in the profits of the business. In the light of all the evidence, we must sustain the Commissioner in his refusal to compute the petitioner's tax liability for the years 1918, 1920 and 1921, under the provisions of section 303 of the Revenue Act of 1918.

The alternative contention of the petitioner is not supported by any convincing proof. There are no abnormalities as to invested capital or other conditions that distinguish this petitioner from other corporations engaged in the undertaking business in San Francisco. We are without knowledge of the rates of excess-profits taxes paid by the concerns suggested as proper comparatives. This whole phase of the petitioner's appeal rests on a few *ex parte* statements by an accountant who had prepared the income and profits-tax returns of other undertaking concerns for some of the years here involved. Such evidence is without probative value.

*Judgment will be entered for the Commissioner.*